1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUAN T.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C19-105 RJB-MLP

REPORT AND
RECOMMENDATION

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by failing to provide specific and legitimate reasons for rejecting the opinions of examining psychologists Victoria McDuffee, Ph.D., Kathleen Anderson, M.D., and Dana Harmon, Ph.D. (Dkt. # 11 at 1.) As discussed below, the Court RECOMMENDS that the Commissioner's final decision be AFFIRMED, and this matter be DISMISSED with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1973 and has a high school education. AR at 32. Plaintiff has primarily worked as a security guard, although he has also worked at a fast food chain and as a

butcher for short periods of time. *Id*. at 63. He was last gainfully employed in 2011. *Id*. at 35-37, 877.

This case has a lengthy procedural history, involving numerous administrative hearings before two different ALJs. In September and November 2010, Plaintiff applied for DIB and SSI benefits, respectively, alleging disability as of January 1, 2008. AR at 57. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. An ALJ conducted a hearing on November 28, 2011, during which Plaintiff amended his alleged onset date to November 23, 2009. *Id.* The ALJ issued a decision on December 22, 2011, finding Plaintiff not disabled. *Id*. at 54-69. The Appeals Council denied Plaintiff's request for review on April 30, 2012. *Id*. at 74-76. Plaintiff did not appeal from the decision of the Appeals Council, and therefore the decision became administratively final. *Id*. at 774, 853.

Plaintiff then filed the instant applications for SSI and DIB on July 12, 2012, alleging disability as of December 23, 2011. AR at 21, 876.[1] Three administrative hearings were conducted on July 22, 2013, October 30, 2013, and January 15, 2014. *Id*. at 849-57, 858-68, 869-98. Plaintiff was not present during the first hearing. *Id*. at 849-57. After finding good cause for Plaintiff's failure to appear at the first hearing, the ALJ held a second hearing on October 30, 2013. When Plaintiff explained that his counsel had only recently resigned from the case, the ALJ postponed the hearing to give Plaintiff sufficient time to find new counsel. *Id*. at 858-68. Plaintiff attended his third hearing on January 15, 2014 without representation, but the ALJ determined that he had had ample opportunity to obtain a representative, and therefore proceeded with the hearing. *Id*. at 869-98.

---

[1] His date last insured is March 31, 2014. AR at 876.

On February 3, 2014, the ALJ issued a decision denying Plaintiff's request for benefits. Specifically, the ALJ found that there was no material change in Plaintiff's condition since the December 2011 decision denying benefits, and adopted the prior ALJ's decision with the exception of his conclusion that Plaintiff could perform his past relevant work as a security guard at step four. AR at 774-83. Instead, the ALJ concluded that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. Plaintiff's request for review by the Appeals Council was denied in June 2015 (AR at 789-91), and he appealed to this Court. *Id*. at 793-94. The case was remanded for further administrative proceedings by the Hon. James L. Robart, based upon the parties' stipulated motion to remand, on December 17, 2015. *Id*. at 798-802, 808-10.

Plaintiff's fourth administrative hearing on his 2012 applications was held on September 20, 2017. AR at 728-40. This hearing was continued when the ALJ determined the record needed to be updated, because recent records from Sound Mental Health had not yet been received by the agency. *Id*. Plaintiff's fifth (and most recent) administrative hearing was held on January 24, 2018, and Plaintiff testified regarding his symptoms. *Id*. at 741-70. After that hearing, the ALJ issued a decision denying benefits on February 18, 2018. *Id*. at 704-27.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one:  Plaintiff has not engaged in substantial gainful activity since December 23, 2011, the alleged onset date.

Step two:  Plaintiff has the following severe impairments: schizoaffective disorder; anxiety disorder; and history of substance use.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Residual Functional Capacity:  Plaintiff can perform a full range of work at all exertional levels, and is able to understand, remember, and carry out simple, routine tasks, where such tasks are predetermined by the employer. Plaintiff can perform work where contact with the general public is not an essential element of any task, but where incidental contact with the general public is not precluded. Plaintiff can have occasional, brief, superficial contact with coworkers, but he should avoid tandem tasks or tasks involving a cooperative team effort. Plaintiff is able to adapt to predictable changes in the workplace.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 704-27.

As the Appeals Council denied Plaintiff's request for review on December 7, 2018, the ALJ's decision is the Commissioner's final decision. AR at 653-58. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

### A.  The ALJ Did Not Err in Evaluating the Medical Evidence

#### 1.    *Standards for Reviewing Medical Evidence*

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give

clear and convincing reasons for doing so if the opinion is not contradicted by other evidence,

and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).

"This can be done by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*,

881 F.2d at 751). The opinions of examining physicians are to be given more weight than non-

examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating

physicians, the uncontradicted opinions of examining physicians may not be rejected without

clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record.

*Bayliss,* 427 F.3d at 1216. Although an ALJ generally gives more weight to an examining

doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion

may nonetheless constitute substantial evidence if it is consistent with other independent

evidence in the record. *Thomas*, 278 F.3d at 957; *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir.

2007).

1    Here, the ALJ rejected the opinions of examining physicians Victoria McDuffee, Ph.D.,

2    Kathleen Anderson, M.D., and Dana Harmon, Ph.D. in favor of the conflicting opinions of two

3    non-examining state agency physicians Cynthia Collingwood, Ph.D., and Vincent Gollogly,

4    Ph.D. AR at 720-24. Accordingly, the ALJ must provide specific and legitimate reasons for

5    rejecting the examining physicians' opinions.

6    The Court will summarize the opinions of each of the three examining physicians, then

7    discuss the reasons for rejecting these opinions the ALJ articulated as applicable to all three

8    physicians, and each individual physician. *Id*. at 720-23. As discussed below, the Court finds that

9    the ALJ properly provided several specific and legitimate reasons, supported by substantial

10    evidence, for declining to adopt their opinions.

                            *2.    Victoria McDuffee, Ph.D.*

12    In July 2012, Dr. McDuffee performed a psychological evaluation of Plaintiff. AR at

13    430-35. On mental status examination, Plaintiff's grooming and hygiene were adequate, his

14    speech was pressured and soft, and his affect was labile. *Id*. at 433. His behavior was suspicious,

15    guarded, hostile, angry, and his mood was agitated, easily frustrated, and irritable. *Id*. She found

16    mild cognitive impairment. *Id*. at 434. Specifically, he seemed paranoid, disoriented to time and

17    circumstance, experienced hallucinations, and showed memory, learning, and concentration

18    issues. *Id*. Dr. McDuffee further found that his performance on the Trail Making tests suggested

19    brain impairment. *Id.* She did not believe he was malingering based on his performance on the

20    Test of Memory Malingering. *Id.* at 435.

21    As a result of her examination, Dr. McDuffee diagnosed schizoaffective disorder and

22    episodic alcohol abuse. AR at 431. She opined that Plaintiff had marked limitations in his ability

23    to communicate and perform effectively in the work setting, ask simple questions or request

1  assistance, be aware of normal hazards, make simple-work related decisions, adapt to changes in

2  a work setting, perform routine tasks without special supervision, learn new tasks, and complete

3  a normal workday and work week without interruptions from psychologically based symptoms.

4  *Id.* at 432. She assessed moderate limitations in his ability to understand, remember, and persist

5  in tasks by following very short and simple instructions, but marked limitations in his ability to

6  follow detailed instructions. *Id.* Dr. McDuffee opined that Plaintiff would remain this impaired

7  for his entire life, and that he should be referred for SSI, case management, counseling, and

8  psychiatric medication assessment. *Id.*

9             *3.     Kathleen Anderson, M.D.*

10        Kathleen Anderson, M.D. examined Plaintiff in February 2013. AR at 483-88. She

11  summarized her interview of Plaintiff regarding his history and symptoms at some length, noting

12  he was a "challenging person to interview." *Id.* at 483-86.[4] Dr. Anderson noted that although

13  Plaintiff was polite, he "appears to be agitated and actively paranoid at the time of the

14  interview." *Id.* at 483. On mental status examination, his thinking was tangential and he spoke in

15  a pressured, non-stop fashion. His affect was labile. *Id.* at 486. He endorsed auditory

16  hallucinations and paranoid delusional thoughts, and his mood was irritable. *Id.* He had problems

17  with fund of knowledge questions like which direction you would travel to get to the Pacific

18  Ocean, could not perform serial 7s correctly, spell "world" correctly backward, or recall a string

19  of five numbers backward. *Id.* He had difficulty interpreting a proverb and remembered only one

20  of three objects after five minutes. *Id.* at 487.

21

22

23  _____

[4] Dr. Anderson noted that she had reviewed an evaluation dated March 22, 2011, which is apparently not part of the AR; Dr. McDuffee's evaluation; and the September 2012 evaluation of Ann Mulcahy, ARNP at Sound Mental Health. AR at 486 (citing AR at 430-36, 443-45).

1    Dr. Anderson diagnosed Plaintiff with schizophrenia, paranoid type, and a history of

2    alcohol abuse. AR at 487. She opined that he would have severe difficulty concentrating on

3    tasks, persisting on tasks and completing tasks in a timely fashion due to paranoid ideation,

4    intrusion of auditory hallucinations, and agitation. *Id*. She further opined that due to paranoid

5    ideation and agitation, he could have severe difficulty interacting consistently or appropriately

6    with coworkers, supervisors, or the public. *Id*. She noted he would be unable to attend a job on a

7    consistent basis related to his psychotic symptoms, and would have very marked difficulty

8    responding appropriately to unforeseen problems or stressors in the workplace because he would

9    "undoubtedly respond to these with an increase in his paranoid thinking." *Id*.

10           *4.    Dana Harmon, Ph.D.*

11    Dr. Harmon examined Plaintiff for DSHS in December 2015. AR at 1164-88. She noted

12    Plaintiff was a "confused informant" who was only able to provide fragmentary history. *Id*. at

13    1164. Plaintiff reported a history of alcoholism, reporting that his most recent relapse with

14    alcoholism was in 2013. *Id*. On mental status examination, Dr. Harmon noted Plaintiff looked

15    confused and often just stared blankly. *Id*. at 1167. His speech was slowed but fairly well

16    organized. *Id*. He was compliant and cooperative, but fairly overwhelmed. *Id*. His affect was

17    "affectively blunted/constricted." *Id.* Harmon described Plaintiff's thought process and content

18    as "markedly slowed, apparently struggling with confused, fearful delusions." *Id*. His memory,

19    fund of knowledge, concentration, and abstract thought were all described as "poor/severely

20    impaired." *Id.*

21    In terms of limitations, Dr. Harmon opined that Plaintiff would have severe limitations

22    (i.e., be unable to perform the activity) in his ability to adapt to changes in a routine work setting;

23    communicate and perform effectively in a work setting; complete a normal workday or

1    workweek without interruptions from psychologically based symptoms; maintain appropriate

2    behavior in a work setting; or set realistic goals and plan independently. *Id*. at 165-66. She

3    further found that Plaintiff would have marked (i.e., very significant) limitations in other areas,

4    including performing activities within a schedule, maintaining regular attendance and being

5    punctual within customary tolerances without special supervision as well as learning new tasks.

6    *Id*. at 1165.

7            5.    *The ALJ's Reasons for Rejecting the Examining Physicians' Opinions Are Specific, Legitimate, and Supported by Substantial Evidence*

8

9          The ALJ summarized each of these examining physicians' opinions (AR at 721), and

10   then provided several reasons for rejecting them. AR at 721-23. Specifically, the ALJ found that

11   (1) the examiners relied in part on Plaintiff's self-report, which is not fully reliable; (2) the

12   opinions were inconsistent with the longitudinal mental status examination findings in Plaintiff's

13   treatment notes and group therapy notes; (3) the opinions were inconsistent with the longitudinal

14   record which showed that Plaintiff's symptoms "significantly improved" when he is compliant

15   with medication and refrained from drinking alcohol; (4) the opinions are inconsistent with the

16   evidence showing Plaintiff's flares were in part due to non-compliance and situational stressors;

17   and (5) there is no evidence that he had problems getting along with authority or would have

18   problems with supervisors. *Id.* at 721-22. With respect to only Dr. Duffee, the ALJ found her

19   opinion "internally inconsistent" with a mini-mental status examination showing only mild

20   cognitive impairment at the time. *Id.* at 19. With respect to Dr. Anderson, the ALJ found that the

21   clinical history Plaintiff reported to her was different than his other reports, and his presentation

22   was different from other appointments around the same time. *Id.* at 718, 723. Similarly, the ALJ

23   found that Plaintiff's presentation to Dr. Harmon was at odds with his presentation at several

contemporaneous appointments. *Id*. at 24.

1

*(a)    The Examining Physicians Relied on Plaintiff's Self-Report*

2

The ALJ found that the opinions of Drs. McDuffee, Anderson, and Harmon relied, in

3

part, on Plaintiff's self-report. AR at 722. The ALJ noted that "as documented above, however,

4

the claimant's self-report is not fully reliable, given the multiple discrepancies replete throughout

5

the record." *Id.* The ALJ further explained that, in particular, the examining doctors "all appear

6

to rely heavily on the claimant's subjective endorsement of ongoing hallucinations. None of

7

them, however, has ever observed him responding to internal stimuli." *Id.* at 723. The ALJ

8

further noted that "there is reason to question the alleged severity and frequency of his psychosis.

9

As noted above, he has provided inconsistent statements regarding the nature of his auditory

10

hallucinations, and his visual hallucinations do not appear as chronic as he has described." *Id.*

11

The ALJ further noted that "his alleged hallucinations do not even appear to interfere with his

12

overall function, given that he retains the ability to distinguish them from reality, that he has

13

never acted on any of the alleged commands to hurt himself or others, and that his psychosis is

14

tolerable when he is compliant with medications." *Id.*

15

Plaintiff has not challenged the ALJ's assessment of his testimony in this case. The ALJ

16

summarized Plaintiff's subjective complaints in great detail, including several pages outlining

17

the numerous inconsistencies in his self-reporting to various providers throughout the record. AR

18

at 717-19. For example, the ALJ noted that in February 21, 2013, Plaintiff reported to Dr.

19

Andersen that he had a history of a psychiatric hospitalization for a suicide attempt when he was

20

in his twenties, but this report is contrary to his report to other providers that he has no history of

21

psychiatric hospitalizations. *Id.* at 718.

22

The fact that a physician has relied on the subjective complaints of a properly discredited

23

Plaintiff can be a legitimate basis for disregarding that physician's opinions. *See Fair v. Bowen*,

885 F.2d 597, 604-05 (9th Cir. 1988) (holding that the ALJ properly rejected a physician's opinion where it was clear the opinion was based solely on the Plaintiff's complaints). In *Chanim v. Colvin*, however, the Ninth Circuit held that an ALJ did not properly reject a physician's opinions based on their reliance on Plaintiff's statements where the opinions documented observations, diagnoses, and prescriptions, in addition to Plaintiff's self-reports. 763 F.3d 1154, 1162 (9th Cir. 2014).

Dr. McDuffee, Dr. Anderson, and Dr. Harmon each relied on clinical observations, diagnoses, and mental status examinations, in addition to Plaintiff's self-reported symptoms. The Court finds that although each of examining physicians clearly listened to Plaintiff's self-report, there is no evidence that they relied more heavily on his report than their own observations and findings. Dr. McDuffee, in particular, administered Trail Making and malingering tests and made numerous observations on examination regarding Plaintiff's paranoia, attitude and behavior on mental status examination. AR at 431-34. Dr. Anderson's observations on examination were also similar to those of Dr. McDuffee. *Id.* at 43-86.

The Commissioner concedes that the ALJ likely erred by considering the examining physicians' reliance on Plaintiff's subjective statements as a reason to reject their opinions, but asserts that any error was harmless because the ALJ provided several other legally valid reasons. The Court agrees. To the extent the ALJ rejected aspects of the physicians' opinions that clearly relied on Plaintiff's self-report rather than their own observations and findings, the Court finds that this was permissible. To the extent the ALJ's decision could be construed as rejecting the entire opinions due to their consideration of Plaintiff's statements, such error was harmless. As discussed below, the ALJ provided several other specific and legitimate reasons for rejecting the examining physicians' opinions.

1

2

    *(b)  The Examining Physicians' Opinions Were Inconsistent with Mental Status Examination Findings During Individual Therapy Sessions and Appointments*

3    The ALJ rejected the examining physicians' opinions because they were inconsistent

4 with the longitudinal mental status findings, *i.e.,* Plaintiff's presentation during individual

5 therapy sessions at Sound Mental Health as well as appointments with other providers. AR at

6 712-16, 722. The ALJ noted that, "with the exception of his subjective endorsement of

7 hallucinations and his occasionally abnormal mood, the claimant has usually exhibited relatively

8 unremarkable mental status." *Id.* at 712. The ALJ then included a five-page summary of

9 Plaintiff's unremarkable presentation at therapy sessions and appointments throughout the

10 record. *Id.* at 712-16.

11    Specifically with respect to the examining physicians' opinions, the ALJ found that, as

12 noted earlier in the decision, "the claimant routinely presents to appointments with euthymic

13 mood, appropriate/euthymic mood/affect, cooperative attitude, alert consciousness, full

14 orientation, good eye contact, logical thought processes, appropriate thought content (except for

15 hallucinations), intact cognitive function, and normal insight-judgment, with no signs of paranoia

16 or suicidal /homicidal ideation." AR at 722. The ALJ acknowledged that Plaintiff has "some

17 limitations due to his mental conditions, but the relatively benign overall mental status findings

18 do not corroborate Dr. McDuffee's, Dr. Anderson's . . . Dr. Harmon's . . . assessment of

19 marked/severe limitations in various domains of social, cognitive, and adaptive function." *Id.*

20 The ALJ asserted that each of the examining physicians "reviewed minimal records in

21 preparation for their respective evaluations, so they were not fully aware of these treatment

22 notes." *Id.*

23

1    The inconsistency between the examining physicians' opinions and the treatment notes in

2    the record is a specific and legitimate reason, supported by substantial evidence, for the ALJ to

3    discount their opinions. An ALJ properly considers how consistent an opinion is with the record

4    as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Here, the Court finds that the ALJ's

5    interpretation of the record is reasonable.

6    As noted above, the ALJ included a lengthy, five-page summary of Plaintiff's

7    presentation in treatment notes throughout the record, noting that mental status examinations

8    often revealed a cooperative attitude, alert consciousness, full orientation, good eye contact,

9    logical thought processes, appropriate thought content save for reports of hallucinations, intact

10   cognitive functioning, and no signs of paranoia or suicidal ideation. AR at 712-16. Contrary to

11   Plaintiff's suggestion that the ALJ ignored indications of abnormalities of affect in therapy

12   sessions and appointments, such as observations of irritability, depression, and anxiety, the ALJ

13   properly acknowledged this evidence. For example, the ALJ noted that in December 2014,

14   Plaintiff was irritable but cooperative, had normal speech and an appropriate affect, maintained

15   good eye contact, and had a logical thought process and intact cognition, though he endorsed

16   hallucinations. *Id.* at 713 (citing AR at 2275-76). Similarly, the ALJ noted that on April 3, 2015,

17   Plaintiff was cooperative, had an appropriate affect, logical thought process, intact cognitive

18   function, and normal insight and judgment. *Id*. (citing AR at 2260-61). The ALJ noted that at an

19   appointment on September 26, 2017, Plaintiff was anxious, with impaired short-term memory,

20   but otherwise exhibited normal mental status findings, including full alertness and orientation,

21   appropriate affect, good eye contact, logical thought processes, and no suicidal/homicidal

22   ideation. *Id.* at 716 (citing AR at 2678).

23

1     Thus, the ALJ properly acknowledged the abnormal findings in the record. *Id.* at 712-16.

2 The ALJ accommodated such findings in the RFC by restricting the complexity of tasks Plaintiff

3 could perform, the type of contact Plaintiff could have with others, and the type of changes

4 Plaintiff could tolerate in the workplace. *Id.* at 710. Plaintiff has not shown how these restrictions

5 would not adequately account for his occasional irritability, depression, and anxious mood.

6     Finally, to the extent Plaintiff suggests the ALJ erroneously failed to discuss some

7 counseling records that reference a domestic violence charge (Dkt. # 11 at 13), the ALJ's failure

8 to discuss one treatment note describing Plaintiff as "paranoid and distrusting of people," among

9 other problems, was not harmful error. AR at 365-69, 457. The Ninth Circuit has long held that

10 "in interpreting the evidence and developing the record, the ALJ does not need to discuss every

11 piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)

12 (internal quotation marks and citation omitted). The ALJ's summary and discussion of the

13 medical record in this case is very lengthy and thorough, and the Court is not persuaded that the

14 ALJ mischaracterized the record through omission. Inconsistency with the treatment notes and

15 longitudinal records was a specific and legitimate reason, supported by substantial evidence, for

16 the ALJ to give the examining physicians' opinions less weight.

17          *(c)    The Examining Physicians' Opinions Were Inconsistent with Plaintiff's*
              *Behavior at Group Counseling Sessions*
18

19     The ALJ also found that Plaintiff's allegations were inconsistent with his ability to

20 participate in group counseling sessions during the last four or five years. AR at 716. The ALJ

21 observed that "[d]uring these group sessions, providers have routinely observed that he behaves

22 cooperatively, pleasantly, respectfully, and attentively, and that he is receptive to comments from

23 others, that he understands and comprehends the materials presented, and that he actively

participates and engages in discussion, including offering insightful feedback and support to

REPORT AND RECOMMENDATION - 14

other members of the group." *Id*. The ALJ then cited to a myriad of group therapy notes that

support this finding, finding that "[t]hese group treatment records fail to substantiate his claims

that he cannot deal with people, that he has poor memory and concentration, and that he has no

ability to sustain activities." *Id.* For example, in July 2015, a group counseling record described

Plaintiff's participation in a "Recovery and the Family" group that read and reviewed "2 articles

citing scientific studies that posit anxiety as a condition that can be passed on through hereditary

means. Topics covered in these discussions included the biological basis of addiction and self-

medication for associated anxiety as well as patterns of anxiety in families of origin…" *Id.* at

2013. Plaintiff stated, "This is interesting," and was described as "polite, talkative, forthcoming,

attentive, supportive, receptive, diligent, insightful, and appropriate." *Id*. Similarly, in April

2015, Plaintiff was described as "cooperative, connected, logical, pleasant, reflective, receptive,

and within normal limits." *Id.* at 2062.

　　　　With respect to the examining physicians, the ALJ concluded that their opinions are

inconsistent with the group therapy notes, during which "providers have routinely observed that

he behaves cooperatively, pleasantly, respectfully, and attentively, that he is receptive to

comments from others, that he understands and comprehends the material presented, and that he

actively participates and engages in discussion, including offering insightful feedback and

support to other members of the group." AR at 722. The ALJ found that Plaintiff's "ability to

participate appropriately with members and staff in a group setting stands in stark contrast to [the

examining physicians'] depiction of the claimant as having minimal/no ability to deal with

people or to maintain appropriate behavior in any type of setting." *Id*.  Moreover, his "ability to

maintain attention, understand and comprehend the materials, and offer insightful thoughts is

further evidence of his relatively intact cognitive function and is contrary to [their] depiction of

1    the claimant has having marked/severe cognitive deficits." *Id.* The ALJ reiterated that Drs.

2    McDuffee, Anderson, and Harmon reviewed only "minimal records in preparation for their

3    respective evaluations, so they were not fully aware of these group therapy notes." *Id*.

4          Plaintiff points out that the ALJ's summary of the group therapy notes fails to include

5    about twenty occasions where Plaintiff displayed an abnormal affect. For example, instances

6    where Plaintiff appeared nervous, upset, paranoid, anxious, frustrated, guarded, depressed, or

7    displayed poor eye contact or flat affect. (Dkt. # 11 at 13-14.) Plaintiff asserts that because the

8    ALJ failed to acknowledge these significant abnormalities, she should not have relied upon the

9    group therapy and appointment notes to reject the examining physicians' opinions. (*Id*. at 15.)

10          The ALJ's interpretation of the group therapy notes was reasonable. Although the

11    Plaintiff is correct that the ALJ did not discuss the instances where Plaintiff presented in group

12    sessions with abnormal affect, she could reasonably conclude that the vast majority of the group

13    therapy notes documented behavior that was inconsistent with the examining physicians'

14    opinions. The ALJ could reasonably conclude that Plaintiff's cooperative, pleasant, respective,

15    and engaged behavior in the group sessions contradicts the examining physicians' assessment of

16    marked limitations in Plaintiff's ability to deal with people and maintain appropriate behavior.

17    AR at 722. Similarly, the ALJ could find that his ability to engage with complex reading material

18    and discussion topics was inconsistent with their assessment of marked/severe cognitive

19    difficulties. AR at 722. Although the ALJ could have better acknowledged those instances where

20    Plaintiff was not as pleasant or cooperative in group therapy sessions, the ALJ's interpretation

21    did not amount to improper cherry-picking of the record. She acknowledges Plaintiff's "flare-

22    ups" and instances where Plaintiff displayed abnormal behaviors elsewhere in her decision, as

23    well as apparent causes of these flare-ups. The inconsistency between the group therapy notes

REPORT AND RECOMMENDATION - 16

1    and examining physicians' opinions was a specific and legitimate reason, supported by

2    substantial evidence, for affording their opinions less weight.

3          *(d)    Plaintiff's "Flare Ups" of Abnormal Affect and Symptoms Were Largely
               Caused by Noncompliance with his Treatment Regimen and Situational
4               Stressors*

5          The ALJ also found that the opinions of Drs. McDuffee, Anderson, and Harmon are

6    inconsistent with the evidence indicating that Plaintiff's "flare-ups," *i.e.*, when he is more

7    symptomatic, are due in part to noncompliance with his treatment regime as well as situational

8    stressors. AR at 722. Earlier in the decision, the ALJ elaborated on the impact of situational

9    stressors on Plaintiff's functioning by finding that "the record indicates there is a situational

10   component to the claimant's mental condition." *Id.* at 719. The ALJ then cited numerous

11   examples, such as Plaintiff's report in April 2013 that he was feeling very depressed and

12   heartbroken, and looked tearful with marginal insight and judgment, after learning that his

13   mother had terminal cancer. *Id.* at 1764. In June 2015, he was depressed, irritable, and anxious

14   and explained that he had "several stressors, especially financial and housing related." *Id.* at

15   2254-55. In March 2017, he reported feeling anxious because his rent had increased and he felt

16   stress and frustration about his power bill doubling. *Id.* at 2464, 2469, 2472.

17          As discussed above, the ALJ did acknowledge abnormal findings in the record, AR at

18   712-16, but found that Plaintiff's symptomatic episodes were often accompanied by situational

19   stressors and were not necessarily indicative of his baseline level of functioning. Plaintiff has not

20   shown how the ALJ's RFC assessment in this case, such as restricting the complexity of

21   Plaintiff's tasks, the type of contact Plaintiff can have with others, or the type of changes

22   Plaintiff could tolerate in the workplace, would not adequately account for his occasional

23   irritability, anxiety, or depressed mood.

REPORT AND RECOMMENDATION - 17

*(e)*     *Plaintiff's Symptoms "Significantly Improved" with Medication Compliance*

The ALJ also declined to adopt the examining physicians' opinions because they were inconsistent with the longitudinal record which indicates that Plaintiff's mental symptoms significantly improve when he is compliant with his medications, and worsen when he is not compliant or when he drinks alcohol. AR at 722. The ALJ noted Plaintiff's report that, with medications, his psychosis is not debilitating and he is able to tolerate his alleged hallucinations. *Id.* The ALJ reiterated that the examining physicians only reviewed a very limited number of records and therefore were not fully aware of the longitudinal evidence. *Id.*

Earlier in the decision, the ALJ noted Plaintiff's long history of being noncompliant with treatment providers' recommendations to take his medications as prescribed and abstain from drinking alcohol because it worsens his mental health symptoms. AR at 711. The ALJ asserted that Plaintiff has had periods when he has been off his prescribed medication, periods when he has relapsed on alcohol, and "[d]uring these periods of noncompliance, he tends to have increased mental symptoms." *Id.* By contrast, the ALJ found that "when the claimant is compliant with treatment, his mental symptoms are improved and more stable." *Id.*

The ALJ then cited numerous examples from throughout the record to support this conclusion. AR at 711-12. For example, the ALJ noted that in January 2013, Plaintiff stated that "[w]hen I am taking my medication[,] I feel like I can handle difficult situations and socialize with others in a police manner." *Id.* at 576. In July 2015, Plaintiff reported that his irritability had decreased since a recent medication adjustment, and that his psychotic symptoms had decreased. *Id.* at 2249. In August 2015, Plaintiff reported "current med combination helps" and he was "doing fine" with "no episodes of behavior dyscontrol, no lashing out, no recent altercations." *Id.* at 2244. In October 2015, Plaintiff reported that he was adhering to his medication regimen and

that he had no debilitating psychotic symptoms or recent altercations or episodes of

aggressiveness. *Id*. at 2261. In October 2016, Plaintiff reported that he had good medication

compliance and "[t]he meds are doing what they should, I am cool." *Id*. at 2604. He noted his

mood was usually 7 out of 10, with 10 being "very happy." *Id*. at 2604. He also reported that his

hallucinations had decreased in severity and frequency since starting Olanzapine. *Id*. at 2604. In

March 2017, Plaintiff reported that his "meds [were] doing what they need to be doing" and that

he was planning a trip to Las Vegas to spend time with family. *Id.* at 2464.

Plaintiff contends that the ALJ erred by finding that his symptoms improved with

medication, as Plaintiff had active medication prescriptions during the times in which he

nevertheless demonstrated significant abnormalities on examination. (Dkt. # 11 at 15-16.) For

example, Plaintiff points out that when he saw Dr. McDuffee, he reported that he was taking

fluoxetine and risperidone and that the medications were effective. *Id.* (citing AR at 420).

Similarly, Plaintiff asserts that he would have been on medications when he saw Dr. Anderson in

February 2013, because his dose of Prozac had recently been increased. *Id.* (citing AR at 473).

Plaintiff told Dr. Anderson that he was taking his medications, and reported improvement, noting

"I'm not wiggin' out like I was. It is what it is. I learned to accept it." AR at 484. Finally,

Plaintiff points out that he was on medications when he saw Dr. Harman in December 2015,

because he was being treated by Ms. Paluga during that period. Ms. Paluga noted that he was

taking his medications and it helped decrease the severity of his symptoms. *Id*. at 2646. Thus,

Plaintiff contends that although he may have reported improvement with his medications, he was

medication compliant at the time of his examinations and nevertheless continued to have

significant difficulties. (Dkt. # 11 at 16.)

1    The Court agrees with the Commissioner that, although it is true that Plaintiff reported

2    having active medication prescriptions during the examinations in which he demonstrated

3    abnormalities, the ALJ is not required to accept Plaintiff's representation that he was compliant

4    with treatment recommendations at the time of the examinations. Plaintiff does not dispute that

5    he has had inconsistent adherence to his treatment regimen, or that he is an unreliable historian.

6    Plaintiff also focuses on whether he reported taking his prescribed medications, while ignoring

7    the effect alcohol use could also have had on his functioning. Even if Plaintiff was taking his

8    prescribed medication at the time of his examinations, he may have been consuming alcohol,

9    which the ALJ found negatively impacted his mental health and functioning. AR at 711. As

10   noted above, the ALJ found that Plaintiff has had "periods when he has been off his prescribed

11   medications," and he "also had periods when he has relapsed on alcohol. During these periods of

12   noncompliance, he tends to have increased mental symptoms." *Id*.

13         Regardless of whether Plaintiff was being compliant at the time of the examinations, the

14   ALJ found that Plaintiff consistently reported improvement of his symptoms (and displayed

15   improved functioning) during periods when he appeared to be medication compliant, and

16   worsening symptoms when he was not compliant. This finding was supported by substantial

17   evidence, as the ALJ could rationally adopt the repeated statements of Plaintiff and his treatment

18   providers regarding the effectiveness of his medication regimen. Although Plaintiff believes that

19   the ALJ should have found him more limited based upon his performance at the examinations, it

20   is the province of the ALJ to resolve conflicts in the medical evidence. (*Id*. at 15-16.) "Where the

21   evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

22   decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

23   Cir. 2002).

1      (f)     *ALJ's Other Reasons*

2          Finally, in addition to the reasons discussed above, the ALJ identified reasons for

3   discounting the opinions of Drs. McDuffee, Anderson, and Harmon that are specific to each

4   examining physician's opinion.

5              (i)     *Dr. McDuffee*

6          The ALJ noted that "with specific regard to Dr. McDuffee's evaluation, it appears

7   internally inconsistent with the mental status examination she administered which showed only

8   mild cognitive impairment." AR at 723 (citing AR at 434). An ALJ may properly reject an

9   opinion that is inconsistent with the physician's own examination findings. *Buck v. Berryhill*,

10  869 F.3d 1040, 1050 (9th Cir. 2017). Plaintiff argues that the ALJ should have found that other

11  examination findings support Dr. McDuffee's opinion as a whole. However, it is the role of the

12  ALJ to weigh conflicting medical evidence, and the ALJ could find that this conflict undermined

13  Dr. McDuffee's opinion regarding Plaintiff's cognitive functioning. *Thomas*, 78 F.3d at 954.

14  This was a specific and legitimate reason, along with the other reasons discussed above, for the

15  ALJ to give Dr. McDuffee's opinion less weight.

16             (ii)     *Dr. Anderson*

17         As noted above, Dr. Anderson found that Plaintiff would have severe difficulty

18  concentrating on and completing tasks, and interacting with others, including supervisors, and

19  that he would be unable to attend a job on a consistent basis due to his psychotic symptoms. AR

20  at 487. With respect to Dr. Anderson's opinion that Plaintiff has marked/severe limitations in his

21  ability to deal with supervisors (i.e., an example of an authority figure), the ALJ found this

22  conclusion to be inconsistent with Plaintiff's own report that "he gets along well with authority

23  figures, including mental health staff, police, and landlords." AR at 723 (citing AR at 387, 1111).

1    Plaintiff appears to concede that this is a valid reason, arguing that it is not a specific and

2    legitimate reason to reject Dr. Anderson's entire report. (Dkt. # 11 at 17.) As discussed at length

3    above, however, the ALJ provided numerous additional reasons for rejecting the entire report.

4         The ALJ further pointed out that contrary to Dr. Anderson's opinion, "providers have

5    frequently observed that the claimant is cooperative, pleasant, and respectful during individual

6    and group therapy sessions." *Id*. The ALJ also found Dr. Anderson's opinion inconsistent with

7    Plaintiff's admission that his psychotic symptoms were not debilitating. AR at 722 (citing AR at

8    2661). Finally, the ALJ found that plaintiff's presentation during Dr. Andersen's evaluation

9    "stands in stark contrast to his presentation during contemporaneous appointments" in 2013,

10   where treating providers found no indication of paranoia or delusions, logical thought processes,

11   and intact cognitive function. *Id.* at 723. The ALJ afforded their observations greater weight than

12   Dr. Anderson's one-time examination since she had no opportunity to review those treatment

13   records. *Id.*

14        These are specific and legitimate reasons, supported by substantial evidence, for the ALJ

15   to afford Dr. Anderson's opinion limited weight. An ALJ properly considers the length of the

16   treatment relationship, and the frequency of examination when evaluating a medical source's

17   opinion. *See* 20 CFR §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). She could reasonably conclude that

18   Dr. Anderson's findings were at odds with Plaintiff's presentation at other examinations in

19   January and March 2013, where Plaintiff showed some depressed/anxious mood and

20   flat/restricted affect, but no other abnormalities (save for the endorsement of alleged

21   hallucinations). AR at 2336-37, 2331-32. Moreover, the fact that Plaintiff reported Dr. Anderson

22   that he had been hospitalized for multiple days following an attempted suicide in his 20s (AR at

23   484), but told other providers he had no psychiatric hospitalizations in the past (AR at 443,

2587), is a valid reason for the ALJ to question whether Dr. Anderson was provided an inaccurate picture of Plaintiff's relevant clinical history. The ALJ provided numerous specific and legitimate reasons, supported by substantial evidence, for affording Dr. Anderson's opinion little weight.

*(iii)    Dr. Harmon*

Finally, the ALJ found that Plaintiff made statements to Dr. Harmon about his substance use history, vocational training history and legal history that are contrary to his other reports throughout the record. AR at 724. The ALJ found that "these discrepancies further undermine the reliability of his self-report to Dr. Harmon." *Id.* In addition, just as the ALJ found with respect to Dr. Anderson, the ALJ found that Plaintiff's presentation to Dr. Harmon was at odds with his presentation to other providers during contemporaneous appointments. *Id.* Specifically, the ALJ noted that during appointments from August 2015 through February 2016, treating providers found Plaintiff presented with appropriate affect, normal speech, logical thought process, intact cognitive function, and normal insight/judgment. The ALJ found that these treating source records, which Dr. Harmon did not have an opportunity to review, are afforded greater weight than Dr. Harmon's one-time observation of Plaintiff.

These were specific and legitimate reasons, supported by substantial evidence, for giving Dr. Harmon's opinion less weight. Dr. Harmon admitted that Plaintiff was "a confused informant who was only able to provide fragmentary information about his personal history." AR at 1164. Thus, the ALJ could conclude that Dr. Harmon was not likely to have obtained a satisfactory longitudinal picture of Plaintiff's functioning from the two medical records Dr. Harmon reviewed (a July 2012 examination by Dr. McDuffee and a June 2014 examination by Geordie Knapp) or from Plaintiff's self-report, especially in light of the ALJ's finding that Plaintiff's

1    performance with Dr. Harmon was at odds with contemporaneous examinations. AR at 724.

2    Contrary to Plaintiff's abnormal affect, speech, thought process, cognitive functioning, insight

3    and judgment in Dr. Harmon's evaluation, in December 2015 and Janaury 2016 Plaintiff

4    displayed appropriate affect, normal speech, logical thought process, intact cognition, normal

5    judgment and insight, although he was anxious, had a dysphoric or depressed mood, and reported

6    hallucinations. *Id.* at 724, 2647-48, 2652-53

7         Accordingly, the Court finds that the ALJ provided legally sufficient reasons for rejecting

8    the opinions of examining psychologists Victoria McDuffee, Ph.D., Kathleen Anderson, M.D.,

9    and Dana Harmon, Ph.D. Although Plaintiff believes the ALJ should have weighed the

10   voluminous medical record differently, by affording less weight to the longitudinal record and

11   more weight to these examining physicians' opinions, the ALJ's interpretation of the evidence

12   was reasonable and must be upheld.

13              **V.    CONCLUSION**

14        For the foregoing reasons, the Court RECOMMENDS that the Commissioner's final

15   decision be **AFFIRMED** and this case **DISMISSED** with prejudice.

16        Objections to this Report and Recommendation, if any, should be filed with the Clerk and

17   served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this

18   Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure

19   to file objections within the specified time may affect your right to appeal. Objections should be

20   noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are

21   served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days

22   after service and filing of objections. If no timely objections are filed, the matter will be ready

23   *//*

for consideration by the District Judge on the date that objections were due.

Dated this 26th day of July.


MICHELLE L. PETERSON
United States Magistrate Judge